UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE DE LA MORA-COBIAN,<br><br>Defendant. | No. 4:19-cr-06024-SMJ<br><br>**ORDER MEMORIALIZING COURT'S ORAL RULING ON DEFENDANT'S MOTION TO DISMISS** |

On January 30, 2020, the Court heard argument on Defendant Jorge De la Mora-Cobian's Motion to Dismiss, ECF No 35. Defendant moved to dismiss the indictment on the grounds that the predicate order of expedited removal was entered in violation of his due process rights. At the conclusion of the hearing, the Court orally denied the motion, finding Defendant failed to exhaust available administrative remedies during the removal proceedings and is therefore precluded from attacking the order of expedited removal underlying the indictment. This Order memorializes and supplements the Court's oral ruling.

## BACKGROUND

Defendant is charged with one count of illegal reentry after removal in violation of 8 U.S.C. § 1326. Defendant is a thirty-nine-year-old alleged Mexican

ORDER MEMORIALIZING ORAL RULING ON MOTION TO DISMISS - 1

national who obtained an eighth-grade education in Mexico. ECF No. 35 at 2. Defendant speaks and reads Spanish but not English. *Id.* He first came to the United States in 1999 when he was eighteen years old. *Id.* In 2001, his sister, a United States citizen, filed a Petition for Alien Relative on his behalf. *Id.* In 2003 in Washington, Defendant was convicted of a DUI and, in 2004, was convicted for an ignition interlock violation. *Id.* Following the ignition interlock violation, Defendant was transferred into immigration custody and was granted a voluntary return to Mexico. *Id.* at 2–3.

After this return, Defendant did not come back to the United States until 2016. *Id.* at 3. Immigration authorities requested additional evidence in support of the Petition for Alien Relative in 2006, but Defendant's sister says she does not recall receiving the request and no longer lived at the address to which it was mailed. *Id.* at 3–4. The petition was denied due to abandonment in December 2006; Defendant's sister also does not recall receiving notice of the denial. *Id.*

On July 17, 2016, Defendant, his wife, and their three children requested asylum at the San Ysidro, California port of entry. *Id.* at 4. Defendant indicates he sought asylum in part because he had been kidnapped approximately two months prior and his kidnappers cut one of his fingers off. ECF No. 35-2 at 3. Upon arriving at the border patrol station, Defendant was separated from his wife and children almost immediately and did not have contact with them for about a week.

ECF No. 35 at 4. On July 18, 2016, he was transferred to a detention center in San Ysidro, California. *Id.* That day, he gave a sworn statement, recorded on the form I-867A. *Id.* Border Patrol Agent Jesus Zazueta conducted the interview and read the form I-867A to Defendant in Spanish without an interpreter. *Id.* at 4–5.

The preamble warnings and notice of rights on the I-867A form advised Defendant that he did not appear to be admissible, that he "may" be denied admission to the country and returned to Mexico, that he "may" be immediately removed, and that if removed he "may" be barred from re-entering for five years or more. *Id.* at 5. Defendant asserts he did not understand he was in formal removal proceedings or that, if removed, he could be barred from re-entering the United States for five years. *Id.* Defendant testified he believed Agent Zazueta's questions were related to and necessary for his asylum claim. *Id.* Defendant initialed each page of the I-867A form, but Defendant states Agent Zazueta did not review the answers recorded on the form with him.[1] *Id.* Defendant also initialed the one-page I-867B "Jurat" for the sworn statement. *Id.* at 6. The Jurat had " 1  pages" and "Page  1  of  1 " typewritten, but all three "1's" are crossed out with a "4" written above them. *Id.*

---

[1] The Government indicates Border Patrol Agent Yvette Molina, who was also involved with processing Defendant on July 18, 2020, was the agent who reviewed Defendant's answers with him after Agent Zazueta conducted the interview. ECF No. 39 at 6.

Defendant's answers indicate that he crossed through the pedestrian lanes at the San Ysidro, California port of entry to ask for political asylum and that he feared persecution or torture if sent back to Mexico. ECF No. 35-8 at 2. Defendant was also asked if he wished to speak with a consular officer and he answered that he did. *Id.* at 3. Border Patrol Agent Yvette Molina prepared a Notice and Order of Expedited Removal on a Form I-860 on the same day, July 18, 2016. ECF No. 35 at 6. Defendant's signature appears on the back of this form without a date. *Id.* 6–7.

Defendant was then transported to a detention center in Georgia and on August 12, 2016, Defendant spoke with an immigration officer by phone and learned that his asylum claim had been denied because the asylum officer determined he did not have a credible fear. *Id.* at 7. Defendant did not ask for review of the credible fear determination by an immigration judge because he believed he would remain in custody for several months and he was worried about continuing to not have contact with his family. *Id.* He asserts he did not understand that he would be unable to subsequently request asylum on the same basis and he does not recall any immigration official explaining the potential for voluntary departure or withdrawing his application for admission. *Id.* Defendant was removed to Mexico approximately one week later. *Id.* at 7–8. Defendant was encountered by immigration officials on September 17, 2016, his prior expedited removal order was reinstated, and he was removed to Mexico the following day.

1 *Id.* at 8. On April 22, 2019 Defendant was encountered during a traffic stop and arrested. *Id.*

On May 14, 2019, Defendant was indicted for illegal reentry. ECF No. 1. On November 14, 2019 Defendant moved to dismiss the indictment. ECF No. 35. After the motion was fully briefed, the Court asked for and received supplemental briefing on the issue whether an alien's waiver of review of a credible fear determination precludes a collateral attack on an underlying expedited removal order. ECF Nos. 45, 46 & 47.

**LEGAL STANDARD**

A defendant charged with illegal reentry under 8 U.S.C. § 1326 may defend against the charge by collaterally attacking the validity of the underlying removal order. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To sustain such an attack, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief" from the predicate removal order, (2) the deportation proceedings "improperly deprived [the defendant] of the opportunity for judicial review," and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d).

Administrative review is unavailable during the expedited removal process except where a noncitizen claims asylum or claims to be a legal permanent

resident. 8 U.S.C. § 1225(b)(1)(C); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011). When challenging expedited removal orders not subject to one of these exceptions, a defendant need only meet the third requirement of establishing fundamental unfairness. *See Raya-Vaca*, 771 F.3d at 1202. However, neither the parties nor the Court could identify case law on whether an alien seeking asylum must have exhausted the administrative remedies available for his *asylum application* in order to collaterally attack an *expedited removal order*.

If an alien's right to appeal was denied in violation of due process, this would also satisfy the first two prongs of § 1326(d). *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) ("If [defendant] did not validly waive his right of appeal, the first two requirements under § 1326(d) will be satisfied.") (citing *Ubaldo-Figueroa*, 364 F.3d at 1049–50); *see also Gonzalez-Villalobos*, 724 F.3d at 1130-31 & n.7.

**DISCUSSION**

Defendant moves to dismiss the indictment on the grounds the predicate order of expedited removal was fundamentally unfair. ECF No. 35 at 1. The Government argues defendant has not shown a due process violation and that he did not exhaust the administrative remedies available to him through his asylum application. ECF No. 39 at 2. Defendant argues (1) he was not required to exhaust

the administrative remedies for his asylum application because that application was distinct from the expedited removal order he is challenging, (2) his waiver of review of the credible fear determination was not considered and intelligent, and (3) requiring asylum applicants to appeal a credible fear determination would result in an arbitrary dichotomy between persons who are found in the United States without authorization and those who present themselves at a port of entry to apply for asylum. ECF No. 46 at 2–5. For the reasons discussed below, the Court determines that Defendant was required to exhaust the available administrative remedies for his asylum application and that Defendant's waiver of review of the credible fear determination was considered and intelligent.

**A.     Exhaustion of Available Remedies**

The Government argues Defendant had an opportunity for administrative review but waived it. ECF No. 39 at 14; ECF No. 47. Defendant argues his failure to seek review of the credible fear determination does not bar a challenge to the removal order because the expedited removal determination is not related to the asylum process. ECF No. 40 at 7. Defendant further contends that requiring exhaustion of the asylum review process would create an arbitrary difference between aliens who are found in the United States without authorization and those who present themselves at a port of entry to apply for asylum. ECF No. 46 at 2–5.

Expedited removal orders provide no opportunity for administrative review

except where the alien claims asylum or claims to be a legal permanent resident.[2] 8 U.S.C. § 1225(b)(1)(C) ("Except as provided [in the subparagraph on credible-fear interviews], a removal order . . . is not subject to administrative appeal . . . ."); *id.* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . , the officer shall order the alien removed from the United States without further hearing or review *unless the alien indicates [] an intention to apply for asylum . . . .*") (emphasis added). This is the statutory language the Ninth Circuit interpreted in *Bajaras-Alvarado* when it determined that there is no opportunity for administrative review of expedited removal orders. *See Bajaras-Alvarado*, 655 F.3d at 1081–82 (quoting 8 U.S.C. §§ 1225(b)(1)(C), 1225(b)(1)(A)(i)); *see also Raya-Vaca*, 771 F.3d at 1202 (quoting same).

---

[2] The applicable regulations provide that, if an alien subject to expedited removal process indicates he or she is afraid to return to his or her country or is afraid of persecution or torture, the process should be halted. 8 C.F.R. § 235.3(b)(4). The expedited removal can go no further until the alien is referred to an asylum officer for a credible fear interview. *Id.* The official processing the expedited removal must provide the alien with a Form M-444, which provides information about the credible fear interview and related rights. 8 C.F.R. § 235(b)(4)(i). At the time of the asylum interview, the asylum officer must "determine that the alien has an understanding of the credible fear determination process." 8 C.F.R. § 208.30(d)(2). If the asylum officer finds the alien has not established credible fear of persecution or torture, the asylum officer must provide the alien an opportunity for judicial review of the adverse decision. 8 C.F.R. § 208.30(g). If the alien refuses such review, the officer shall order the alien removed via a Form I-860. 8 C.F.R. § 208.30(g)(1)(ii).

Defendant points to the language of 8 U.S.C. § 1326(d)(1) to argue that the exhaustion requirement only relates to administrative review of the expedited removal order. ECF No. 46 at 2. Defendant argues that, because no administrative remedies were available for the expedited removal order, he need only establish fundamental unfairness under 8 U.S.C. § 1326(d). However, unlike the defendants removed through expedited removal in *Bajaras-Alvarado* and its progeny, Defendant had an opportunity for administrative review. *See* 8 U.S.C. § 1225(b)(1)(C); *id.* § 1225(b)(1)(A)(i); *see also Bajaras-Alvarado*, 655 F.3d at 1087 ("Because Barajas-Alvarado never claimed that he was a lawful permanent resident, a refugee, or an asylum recipient, he was not entitled to administrative review of his expedited removal orders under § 1225(b)"). As such, in order to challenge the underlying expedited removal order, Defendant must meet all three requirements of § 1326(d), including showing he exhausted available administrative remedies through the asylum process.

Defendant's argument that this conclusion results in an irrational dichotomy between aliens found in the United States without authorization and those who present themselves at a port of entry to apply for asylum is unavailing. In an expedited removal proceeding, aliens present in the United States without authorization are treated as applicants for admission just as persons arriving at a designated port of entry. *See* 8 U.S.C. § 1225(a)(1) ("An alien present in the

United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed for purposes of this Act an applicant for admission.").

Defendant admits that he was asked if he wanted to have an immigration judge review the negative credible fear determination and waived that opportunity because he believed he would remain in custody for several months and wished to be reunited with his family. ECF No. 35 at 7. If this waiver of the right to review was valid, then Defendant is precluded from collaterally attacking the removal order. Because Defendant challenges the validity of the waiver, the Court next turns to whether Defendant's waiver was in violation of due process.

**B.      Validity of Waiver**

"[A]n alien is barred from collaterally attacking the validity of an underlying deportation order 'if he validly waived the right to appeal that order' during the deportation proceedings." *United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005) (quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001)). If the waiver was not valid, then the first two prongs of § 1326(d) are satisfied. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012). To be valid, a waiver of the right to appeal must be both considered and intelligent. *Id.* If a person did not receive "adequate advisement of the consequences of his waiver of appeal," then the waiver is not considered and

intelligent. *See United States v. Ramos*, 623 F.3d 672, 681 (9th Cir. 2010). The Government bears the burden of showing by clear and convincing evidence that the Defendant's waiver was valid. *Id.*

The Government attached the copies, in English and Spanish, of the Form M-444 that Defendant was given, which described the credible fear process. ECF Nos. 39-2, 39-3. These forms instructed that, if the asylum officer determined Defendant did not have a credible fear of persecution, Defendant could appeal that decision to an immigration judge who would review the case within 7 days. ECF No. 39-2 at 2. The form also warned that, if ordered removed, Defendant "may be barred from reentry to the United States for a period of 5 years or longer." *Id.* At oral argument, Defendant indicated he did not remember receiving the forms, but acknowledged the forms are dated July 18, 2016 and that his signature appears at the bottom of each.

At the hearing, Defendant also stated that when the asylum officer denied his claim, she told him he could appeal her decision to a judge. Defendant testified he understood that, if he had done so, the judge might overturn her decision and that if the judge overturned the decision, he would not be removed. Defendant also testified he understood that if he did not appeal, he would be removed from the United States. Defendant testified he did not seek review because he heard

from other detainees that the process could take months, and he had not seen his family in a month and wanted to be with them.

Defendant's waiver was considered and intelligent. Not only did he receive adequate advisement of the consequences of his waiver of appeal through the forms, but he also evidently understood the consequences of his waiver. Defendant argues he did not know that "waiving his credible fear claim would preclude him from arguing that the border patrol and immigration officers violated his due process rights" in the expedited removal. ECF No. 46 at 4. Defendant was warned he could be removed and that, if removed, he may be barred from reentry for five years. ECF No. 39-2 at 2. However, Defendant was warned that if removed, he could be prohibited from reentering the United States for five years. He stated he understood that if he did not ask for review of the negative credibility determination, he would be removed and that asking for review could result in his not being removed. Defendant cites no authority for the proposition that for a waiver to be considered and intelligent, the person must be warned of every potential outcome, particularly where that outcome is contingent on his future unlawful reentry into the United States.

The Court does not make light of the seriousness of Defendant's circumstances when he decided to waive review. Defendant had been separated from his wife and children for a month, did not know when he would see them

again, and wanted to be reunited with them. Although he was in a difficult position, his decision to waive review was considered and intelligent and he therefore failed to exhaust administrative remedies available to him and is precluded from challenging his 2016 removal.

## CONCLUSION

Defendant had an administrative remedy available to him through the asylum process. He waived his right to review and, because that waiver was considered and intelligent, he cannot meet the requirements under § 1326(d) and is barred from collaterally attacking the 2016 removal order. The motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

Defendant's Motion to Dismiss, **ECF No. 35**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 10th day of February 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge